# 22-2735

## United States Court of Appeals
## for the Second Circuit

CLASSIE DORSEY,

*Plaintiff-Appellant,*

*against*

VINCENT F. GANNON, JAMES P. O'NEILL,
and CITY OF NEW YORK,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York

**BRIEF FOR APPELLEES**

RICHARD DEARING
JAMISON DAVIES
LAUREN L. O'BRIEN
   *of Counsel*

November 9, 2023

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-0852 or -2490
lobrien@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT .................................................................. 1

ISSUES PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE .................................................................... 3

    A.  Dorsey's arrest following the match of her photograph with images of the suspect cashing a forged check .................... 3

    B.  Dorsey's release after further investigation by the District Attorney's Office ............................................................. 5

    C.  This lawsuit and the district court's decision granting summary judgment to defendants ............................................. 6

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW ............. 8

ARGUMENT ............................................................................................ 10

    A.  Probable cause defeats Dorsey's claims for false arrest and malicious prosecution. ....................................................... 10

    B.  Dorsey's remaining claims lack merit ...................................... 18

CONCLUSION ........................................................................................ 22

CERTIFICATE OF COMPLIANCE ....................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amnesty Am. v. Town of W. Hartford,*
361 F.3d 113 (2d Cir. 2004) .......................................................... 20, 21

*Bellamy v. City of N.Y.,*
914 F.3d 727 (2d Cir. 2019) ............................................................... 20

*Brett v. Shearman,*
751 F.3d 78 (2d Cir. 2014) .......................................................... 10, 16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................ 8

*Curley v. Village of Suffern,*
268 F.3d 65 (2d Cir. 2001) ................................................ 11, 12, 14, 16

*Escalera v. Lunn,*
361 F.3d 737 (2d Cir. 2004) ............................................................... 17

*Fabrikant v. French,*
691 F.3d 193 (2d Cir. 2012) ......................................................... 12, 13

*Garcia v. Hartford Police Dep't,*
706 F.3d 120 (2d Cir. 2013) ................................................................. 8

*Garnett v. Undercover Officer C0039,*
838 F.3d 265 (2d Cir. 2016) ............................................................... 11

*Harlen Assocs. v. Inc. Vill. of Mineola,*
273 F.3d 494,499 (2d Cir. 2001) ....................................................... 18

*Higazy v. Templeton,*
505 F.3d 161 (2d Cir. 2007) ............................................................... 10

*Hu v. City of N.Y.,*
927 F.3d 81 (2d Cir. 2019) ........................................................... 18, 19

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Kaley v. United States,*
571 U.S. 320 (2014) ........................................................................ 11, 15

*Kia P. v. McIntyre,*
235 F.3d 749 (2d Cir. 2000) ................................................................ 19

*Lowth v. Town of Cheektowaga,*
82 F.3d 563 (2d Cir. 1996) ...................................................... 10, 11, 18

*Manganiello v. City of N.Y.,*
612 F.3d 149 (2d Cir. 2010) .................................................... 11, 14, 16

*Mara v. Rilling,*
921 F.3d 48 (2d Cir. 2019) ............................................................ 15, 16

*People v. Argyris,*
24 N.Y.3d 1138 (2014) ........................................................................ 11

*Roberts v. Azize,*
767 F. App'x 196 (2d Cir. 2019) ......................................................... 15

*Segal v. City of N.Y.,*
459 F.3d 207 (2006) ............................................................................ 20

*Sphere Drake Ins. PLC v. J. Shree Corp.,*
2002 U.S. Dist. LEXIS 5327 (S.D.N.Y. Mar. 28, 2002) ..................... 21

*Torcivia v. Suffolk Cnty.,*
17 F.4th 342 (2d Cir. 2021) ................................................................ 20

*United States v. Colon,*
250 F.3d 130 (2d Cir. 2001) ................................................................ 16

*United States v. Elmore,*
482 F.3d 172 (2d Cir. 2007) ......................................................... 11, 15

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Vincent v. Winski,*
  2018 U.S. Dist. LEXIS 47537 (S.D.N.Y. Mar. 22, 2018) ................... 21

*Weyant v. Okst,*
  101 F.3d 845 (2d Cir. 1996) ........................................ 10, 14

*Yueqing Zhang v. Gonzales,*
  426 F.3d 540 (2d Cir. 2005) ............................................. 10

**Statutes**

Fed. R. App. P. 30(a)(2) ................................................... 3

Fed. R. Civ. P. 56(a) ...................................................... 8

Fed. R. Evid. 408 ......................................................... 21

Fed. R. Evid. 801(c)(2) ................................................... 15

N.Y. Crim. Proc. Law § 70.10(2) .......................................... 16

## PRELIMINARY STATEMENT

Plaintiff Classie Dorsey was arrested after three separate law enforcement officers, including her own probation officer, matched her photo to that of a woman suspected of check forgery. The charges against her were eventually dropped, and she then brought this action against the City of New York, an NYPD detective, and the NYPD commissioner, asserting false arrest and malicious prosecution, among other claims. The United States District Court for the Eastern District of New York (Chen, J.) granted summary judgment to defendants, primarily because there was ample probable cause to arrest Dorsey. This Court should affirm.

After the NYPD began receiving complaints about forged checks cashed at various TD Bank locations, an NYPD detective, Vincent Gannon, obtained stills from bank surveillance camera footage recording a woman using a fake driver's license with the name of an account holder to cash a forged check for $2,400. Detective Gannon circulated the stills and a copy of the woman's fake Pennsylvania driver's license to other police departments and received a response from a Pennsylvania detective who identified Dorsey as the suspect. Detective Gannon, the Pennsylvania detective, and Dorsey's probation officer compared a

close-up picture of Dorsey to the surveillance stills and each concluded that she was the woman in the video.

Under those circumstances, Detective Gannon had clear probable cause to arrest Dorsey and for any limited participation he had in the proceeding against her. Dorsey neither disputes that the three officers each identified her as the woman in the surveillance video nor contests that the three positive identifications, if considered, provide a reasonable basis for probable cause. Instead, she insists that the close-up picture of her that the officers relied on is a "complete fabrication" and that this Court should disregard any statements by the other two officers as "pure hearsay." Those arguments fail—the first because it lacks even a scintilla of evidentiary support, and the second because it is contrary to settled law. Courts look to the information available to the officer at the time to determine if probable cause existed, even if that evidence would have been inadmissible in a criminal trial.

## ISSUES PRESENTED FOR REVIEW

Did the district court properly grant summary judgment where

(a) probable cause defeats Dorsey's claims for false arrest and malicious

prosecution; and (b) Dorsey's equal protection and *Monell* claims lack

support in the record?

## STATEMENT OF THE CASE

### A. Dorsey's arrest following the match of her photograph with images of the suspect cashing a forged check

In November 2017, the NYPD received complaints about attempts

to cash forged checks using a fake driver's license at a number of TD Bank

locations (*see* Appendix ("A") 21-24; ECF No. 30-4).[1] As relevant here, on

November 8 a woman cashed a fraudulent check for $2,400 using a fake

Pennsylvania driver's license (A21, 44, 54). Less than a week later, the

same woman attempted to cash a forged check for $4,100—using another

---

[1] Despite the dictates of Federal Rule of Appellate Procedure 30(b)(1), Dorsey did not contact appellees to determine the contents of the appendix nor serve a designation of the record entries she intended to include. For that reason, the appendix is missing relevant documents appellees would have designated for inclusion, such as the complaint, the parties' Rule 56.1 statements, and much of the evidence included with those statements. We refer to the district court's docket entries for those materials. *See* Fed. R. App. P. 30(a)(2).

3

fake Pennsylvania driver's license with the same picture—from another customer's account (A23-24, 47).

NYPD Detective Vincent Gannon was assigned to the case (A27). He obtained TD Bank's surveillance footage of the November 8 incident, as well as copies of the fraudulent Pennsylvania driver's licenses (A33, 38, 48). After some time with no leads, Detective Gannon sent a "CrimeDex" alert containing two close-up images of the woman from the surveillance video and a copy of the fake driver's license seeking information from law enforcement officials around the country (A44).

Detective Michael Henricks from a Pennsylvania police department responded the next day (A45-48). He informed Detective Gannon that the driver's license numbers traced back to a town in Pennsylvania (A45). Ultimately, Detective Henricks identified Classie Dorsey as a likely match to the woman in the surveillance video (A45). He sent Gannon her criminal history and a close-up image of her face, noting that he was "pretty sure" Dorsey was the woman from the video and that "her criminal history is loaded with thefts" (A34, 41, 45, 50).

Detective Gannon then compared the Dorsey's photograph to the woman in the surveillance video and determined with 100% certainty

that they were a match (A34, 41). He learned that she was currently on probation in Pennsylvania and contacted her probation officer (A34, 43). He conferred with both Detective Henricks and Dorsey's probation officer, who each agreed that Dorsey was the woman in the video (A34).

At that point, Detective Gannon contacted Dorsey and instructed her to travel to New York for her arrest (A68). She was placed into custody and charged with grand larceny and identity theft, among other crimes (A68-69, 76; ECF No. 30-1 ¶ 8).

## B. Dorsey's release after further investigation by the District Attorney's Office

After Dorsey's arrest, the Queens County District Attorney's Office's continued investigation uncovered new information that led to the dismissal of Dorsey's case. Cell-site location data revealed that Dorsey's cell phone was in Pennsylvania during the two crimes (A77). Dorsey's sister-in-law provided pay stubs indicating Dorsey had been working in Pennsylvania as a home-care aide to her husband on the relevant dates (A77). And Dorsey passed a polygraph test during which she stated she had not committed the crimes (A83).

Ultimately, the investigators at the District Attorney's Office concluded that while "[v]ideo surveillance of the incident depicts a woman who fits the description of the defendant," they could not "say conclusively that it is in fact the defendant" in light of the new evidence (A59). The charges against Dorsey were then dismissed (A57, 77-78).

## C. This lawsuit and the district court's decision granting summary judgment to defendants

Dorsey then sued Detective Gannon, NYPD Commissioner James P. O'Neill, and the City of New York under § 1983 for false arrest, false imprisonment, malicious prosecution, violating equal protection, and *Monell* liability, in addition to several state law claims (ECF No. 1). The district court granted summary judgment to defendants on all claims (A11-20).

First, the court found there was probable cause to arrest Dorsey based on Detective Gannon's determination that Dorsey was the woman in the surveillance video, as well as the concurring opinions of Detective Henricks and Dorsey's probation officer (A16). The court rejected Dorsey's invitation to ignore Detective Gannon's testimony that he conferred with Detective Henricks and the probation officer, relying on

the rule that hearsay evidence is permissible to establish probable cause (A16). The court also rejected as conclusory and speculative the notion that "Detective Henricks (somehow) secured a high-resolution photograph of the 'real' suspect ... and then passed it off to Detective Gannon as a photograph of Plaintiff" (A17). The district court dismissed Dorsey's malicious prosecution claims on the same grounds (A18).

The court then dismissed Dorsey's equal protection claim, finding that her conclusory allegations of race discrimination lacked any evidentiary support (A18-19). The court noted that, contrary to Dorsey's allegations that she was arrested solely because of her race, Detective Gannon relied on three independent determinations that Dorsey was the person in the surveillance video (A19).

Finally, because Dorsey failed to adequately allege a constitutional violation, the court found that her *Monell* claims against the City of New York and the NYPD commissioner also failed (A19). Declining to exercise supplemental jurisdiction over Dorsey's state law claims, the court dismissed Dorsey's complaint in its entirety (A19-20).

## SUMMARY OF ARGUMENT
## AND STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, construing all evidence in the light most favorable to the non-moving party. *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013). It should affirm because there is no genuine dispute as to any material fact and the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Probable cause defeats Dorsey's false arrest and malicious prosecution claims. Detective Gannon reviewed a surveillance video of a woman using a fraudulent Pennsylvania driver's license to cash a forged check, obtained close-up images of the woman in the video, and determined that a high-resolution mugshot of Dorsey matched the images of the woman in the video. Two other officers—including her own probation officer—identified Dorsey as the woman in the surveillance video.

Dorsey does not dispute that all three officers identified her as the woman in the video. Instead, she insists that the court should disregard Henricks' and the probation officers' identifications and that the photograph was a "faked photograph"—not a photograph of Dorsey, but an image of the *real* perpetrator being passed off as Dorsey's mugshot.

8

Those assertions go nowhere. Dorsey's wholly speculative claim that the mugshot was somehow "faked" utterly lacks record support. And out-of-court assertions, including those of other officers, can be considered to determine what the arresting officer knew at the time of arrest and thus to establish the existence of probable cause.

Dorsey's conclusory equal protection claim likewise fails. Nothing in the record supports her assertion that Detective Gannon sought to arrest any black woman in Pennsylvania without regard to who actually committed the crimes. Rather, another detective suggested to Detective Gannon that Dorsey was a strong match with the woman in the surveillance video. Gannon relied not only on his own comparison of the two images and determination that they were in fact a match, but also on the independent concurring opinions of two other officers.

Because her constitutional claims fail, Dorsey's *Monell* claims fail as well. But even if she had shown a violation of her constitutional rights, she still failed to point to an official policy or custom, or any failure in training, that would support her claim for municipal liability. Her

9

reliance on a single, long-settled lawsuit against Detective Gannon is inadequate.[2]

## ARGUMENT

### A. Probable cause defeats Dorsey's claims for false arrest and malicious prosecution.

To prove false arrest, a plaintiff must show that (1) the officer intended to confine the plaintiff; (2) the plaintiff was aware of the confinement and did not consent to it; and (3) the officer lacked probable cause. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Thus, the existence of probable cause—in other words, "knowledge or reasonably trustworthy information of facts and circumstances" indicating a person committed a crime, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)—is a complete defense to a claim of false arrest. *Brett v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

---

[2] In addition to her federal claims, Dorsey brought several state-law claims. The district court declined to exercise supplemental jurisdiction over those claims (A19). Dorsey neither challenges that holding nor raises those claims on appeal and they are thus abandoned (*see* App. Br. 9-11, 26). *Higazy v. Templeton*, 505 F.3d 161, 168, n.7 (2d Cir. 2007) ("An argument or an issue that is not raised in the appellate brief may be considered abandoned."); *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (argument deemed abandoned where the appellate brief devoted "only a single conclusory sentence" to it).

As the Supreme Court has "often told litigants," probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (describing probable cause as "a rather low threshold"). Courts consider the information available to the officer immediately before and at the time of arrest to determine whether there was probable cause to arrest. *Lowth*, 82 F.3d at 569. Even mistaken information may support a finding of probable cause as long as it was reasonable for the officer to rely on it at the time. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). And statements made to the arresting officer, including tips from anonymous sources or unidentified eyewitnesses, can support probable cause under circumstances indicating the reliability of those statements. *See United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007); *People v. Argyris*, 24 N.Y.3d 1138, 1162 (2014).

Because a police officer's purpose is to apprehend a suspect, not to ultimately determine guilt through a weighing of the evidence, "once a police officer has a reasonable basis for believing there is probable cause, [the officer] is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village*

11

*of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *see also Fabrikant v. French*, 691 F.3d 193, 217 (2d Cir. 2012) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.").

Detective Gannon plainly had reason to believe that Dorsey was the woman caught on camera cashing and attempting to cash forged checks at the TD Bank. Detective Gannon personally reviewed surveillance footage of the crime (A33-34) and sought further information from officers in other jurisdictions (A44). Taking note of the woman's fraudulent Pennsylvania driver's licenses, Detective Henricks consulted Pennsylvania arrest records and identified Dorsey as a likely match to the woman in the surveillance video (A34, 41, 44-49). After comparing the photographs, Detective Gannon concluded that Dorsey's mugshot and the woman in the surveillance video were a match (A41, 66). Detective Henricks and Dorsey's probation officer agreed (A34). The three separate identifications provided at least a reasonable basis for probable cause that defeats Dorsey's false arrest claim. *See Curley*, 268 F.3d at 70

12

(identification by eyewitness sufficient to establish probable cause even where there were conflicting accounts).

Dorsey's arguments in response are all either conclusory or contrary to settled law, or both. Dorsey primarily contends that the mugshot of Dorsey that Detective Henricks emailed Detective Gannon was a "complete fabrication," and actually depicts the real perpetrator (App. Br. 31-32, 36). As Dorsey offers nothing more than conjecture that the photograph was a "complete fabrication" created to support the arrest (*id.* at 32), and fails to explain how the detectives would have obtained a headshot of the woman in the surveillance video, the district court correctly found that that assertion "borders on frivolous" (A17). *See Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (conclusory statements and mere allegations cannot defeat a summary judgment motion).[3]

Next, citing little caselaw, Dorsey claims the investigation was insufficient and faults Gannon for declining to seek a physical description of the suspect from the bank tellers or from the true owners of the bank accounts (App. Br. 31). But Detective Gannon's determination that

---

[3] Dorsey points to another mugshot that she claims is her "actual" mugshot (App. Br. 32), but her argument is further undermined by the fact that the two images appear to depict the same person. *Compare* A50 *with* A60.

Dorsey's proposed steps would have added little to his investigation was reasonable—Gannon had already obtained clear images of the suspect, and the account holders had never actually seen her (A33-34, 62). In any event, because Gannon already had a reasonable basis for probable cause when he arrested Dorsey, he was not required to investigate any further before making an arrest. *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). That is true even if further investigation "might have cast doubt upon the basis for the arrest," *Curley*, 268 F.3d at 70, contrary to Dorsey's argument that Gannon should have gathered the same information that later led the District Attorney's Office to recommend dismissal (App. Br. 33). *Id.* (officers not required to investigate "every theoretically plausible claim of innocence before making an arrest"); *Manganiello*, 612 F.3d at 161 (mistaken information can support probable cause).

Finally, though Dorsey does not seem to dispute that three officials identified her as the woman in the surveillance video (*see* App. Br. 13-14), Dorsey urges this Court to ignore those positive identifications, contending that they constitute inadmissible hearsay (*id.* at 13-14, 16). That argument is misguided. Even assuming the statements would have

14

been inadmissible in a *criminal* trial, here they would be offered "to show what information was available" to the defendants "to support the conclusion that they had probable cause to arrest" Dorsey, not for the truth of the statements themselves, and thus are "not hearsay." *Roberts v. Azize*, 767 F. App'x 196, 199 (2d Cir. 2019); Fed. R. Evid. 801(c)(2). And, in any event, it is well established that "[e]vidence need not be admissible at trial in order to support a finding of probable cause." *Mara v. Rilling*, 921 F.3d 48, 75 (2d Cir. 2019) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013)); *Kaley*, 571 U.S. at 338-39 (probable cause analysis is "relatively undemanding" and requires fewer formalities).

For example, in *Mara*, this Court explained that even where a photograph identification procedure is so suggestive that the resulting identification would have been inadmissible in a criminal trial, it may still support a finding of probable cause. 921 F.3d at 75. Indeed, in the grand jury context, the Supreme Court has held that "hearsay alone" is sufficient to support probable cause. *Kaley v. United States*, 571 U.S. 320, 338 (2014) (citing *Costello v. United States*, 350 U.S. 359, 362-64 (1956)); *see also United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) (anonymous tip may be considered to establish probable cause if

corroborated); N.Y. Crim. Proc. Law § 70.10(2) (providing that evidence of probable cause may "include or consist of hearsay").

Dorsey both ignores that caselaw and fails to provide any other basis for disregarding the information available to Detective Gannon leading up to the arrest. Even if she had pointed to some defect with the identification, all this Court requires is that the information "reasonably inform[ed] probable cause." *Mara*, 921 F.3d at 75. Here, the concurring identifications from two other officers, which were corroborated by Detective Gannon's own observations, reasonably informed his determination that there was probable cause for the arrest (*see* A34, 45). *Cf. United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (officers lacking sufficient information to establish probable cause "may nonetheless act reasonably in relying on information received by other law enforcement officials"); *Curley*, 268 F.3d at 70 (eyewitness identification supported probable cause).

Probable cause defeats Dorsey's malicious prosecution claim as well because the existence of probable cause is also a complete defense to malicious prosecution. *Brett v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Manganiello v. City of N.Y.*, 612 F.3d 149, 161-62 (2d Cir. 2010). As

16

explained above, Gannon properly determined that there was probable cause to believe Dorsey had committed a crime, based on comparing her mugshot to the video and supported by two other officials.

Even putting aside Gannon's testimony that he continued to believe Dorsey committed the crime even after the arrest (A66), Dorsey points to no information that would have caused a reasonable officer to question whether probable cause remained at that point. Contrary to Dorsey's argument, the fact that she arrived at the precinct without a walker or glasses (App. Br. 31) in no way differentiates her from the woman in the video. Nor does her assertion that she is taller than the woman in the video find any support in the record—Detective Gannon could not have determined the suspect's exact height based on the surveillance video (A44), and Dorsey is in any event not unusually tall (*see* A60).

At minimum, Detective Gannon was entitled to qualified immunity on the false arrest and malicious prosecution claims on the ground that there was "arguable probable cause" to arrest Dorsey. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). In evaluating a government official's claim of qualified immunity, courts do not substitute their own judgment as long as the official's judgment fell "within the boundaries of objective

17

reasonableness." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Because three separate officers concluded that Dorsey was the woman in the surveillance video, and investigators later agreed that the "[v]ideo surveillance of the incident depicts a woman who fits the description of the defendant" (A59), there was at least "arguable" probable cause for the arrest—all that is needed to dismiss her claims.

### B. Dorsey's remaining claims lack merit.

Dorsey also advanced an equal protection claim based on racial discrimination against Detective Gannon and a *Monell* claim against the City and the NYPD commissioner. Neither claim succeeds.

To overcome summary judgment on her equal protection claim against Detective Gannon, Dorsey must show that she was (1) treated differently from similarly situated individuals and (2) that such differential treatment was motivated by an intention to discriminate based on impermissible considerations such as race or gender. *Hu v. City of N.Y.*, 927 F.3d 81, 91 (2d Cir. 2019); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494,499 (2d Cir. 2001). Dorsey points to no evidence whatsoever of either differential treatment or a discriminatory motive. Rather, contrary to her speculative contention that Detective Gannon

sought to arrest "any African American woman residing in Pennsylvania, who remotely resembled the person depicted in bank surveillance videos" (App Br. 42), he determined from her photograph that she was the woman in the video, and sought support for that conclusion by conferring with two other officials (A34). Moreover, Dorsey was initially identified as a possible suspect not by Detective Gannon, but by the Pennsylvania detective who emailed Gannon her photograph (A45).

Though Dorsey contends that "[a]ll [Gannon] wanted to do was close the case" (App. Br. 34), his alleged statement that his supervisor was pushing him to close his open cases (A94) in no way suggests a discriminatory motive. A desire to close cases is good police practice, not evidence of discrimination. Absent any actual evidence of a discriminatory motive for her arrest, her equal protection claim fails. *See Hu*, 927 F.3d at 91; *Kia P. v. McIntyre*, 235 F.3d 749, 763 (2d Cir. 2000) (equal protection claim cannot survive summary judgment "on the basis of conclusory allegations alone").

Dorsey's *Monell* claim fails as well. To survive summary judgment on her *Monell* claims against the City and the NYPD commissioner, Dorsey must establish that she suffered the denial of a constitutional

19

right that was caused by an official municipal policy or custom. *Bellamy v. City of N.Y.*, 914 F.3d 727, 756 (2d Cir. 2019) (citing *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)). The district court correctly held that Dorsey's *Monell* claims fails because her underlying constitutional claims fail. *See Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 363-64 (2d Cir. 2021) (municipality may be liable under *Monell* only where its policy or custom violated plaintiff's constitutional rights); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2006) (where district court found no constitutional violation, decision not to address *Monell* claim "was entirely correct").

In any event, even assuming an underlying constitutional violation, Dorsey failed to point to any particular official policy, custom, or failure to train that violated her constitutional rights. *See Segal*, 459 F.3d at 219 (*Monell* extends liability where failure to train led to constitutional injury). Evidence beyond the "mere fact that misconduct occurred in the first place" is required to raise an inference that inadequate training caused an injury. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004). But Dorsey's claim that a failure to train Detective Gannon resulted in the denial of her constitutional rights rests solely on a single, long-settled case against Detective Gannon (App. Br. 40).

Putting aside that that alone is insufficient to establish a failure to train, a "settlement is not proof of liability" and the fact that the case against Gannon was settled does not show he committed any misconduct. *Sphere Drake Ins. PLC v. J. Shree Corp.*, 2002 U.S. Dist. LEXIS 5327, at *53 n.10 (S.D.N.Y. Mar. 28, 2002); *Vincent v. Winski*, 2018 U.S. Dist. LEXIS 47537, at *49 (S.D.N.Y. Mar. 22, 2018) (in rejecting failure-to-train claim, noting that "the mere fact that a case settled is not probative of liability unless there was a concession of liability"); Fed. R. Evid. 408, Notes of Committee on the Judiciary, Senate Report No. 93-1277 (explaining that Rule 408 "makes evidence of settlement … of a disputed claim inadmissible when offered as an admission of liability"). Accordingly, Dorsey's *Monell* claims also fail. *Cf. Amnesty Am.*, 361 F.3d at 130 (failure to train theory fails where plaintiff offered only evidence of two instances of excessive force).

# CONCLUSION

This Court should affirm.


Dated:   New York, NY
         November 9, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____

LAUREN L. O'BRIEN
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-0852
lobrien@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
LAUREN L. O'BRIEN
  *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 4,154 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
LAUREN L. O'BRIEN