22-2735
*Dorsey v. Gannon*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

CLASSIE M. DORSEY,

> *Plaintiff-Appellant*,

v.                                                            No. 22-2735

VINCENT F. GANNON, JAMES P. O'NEILL, CITY OF NEW YORK,

> *Defendants-Appellees*.

_____

**For Plaintiff-Appellant:**             Earl Raynor, Philadelphia, PA.

**For Defendants-Appellees:**       Richard Dearing, Jamison Davies, Lauren L. O'Brien, *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Pamela K. Chen, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 3, 2022 judgment of the district court is **AFFIRMED**.

Classie Dorsey appeals from the district court's grant of summary judgment in favor of Vincent Gannon, James O'Neill, and the City of New York (collectively, "Defendants") on Dorsey's claims that she was wrongly arrested in violation of her constitutional rights under 42 U.S.C. § 1983. We assume the parties' familiarity with the issues on appeal, underlying facts, and procedural history, as to which we provide only a brief description as necessary to resolve this appeal.

In 2017, New York Police Department ("NYPD") detective Vincent Gannon began investigating two incidents in which a woman with a fake Pennsylvania driver's license attempted to cash forged checks at banks in the New York City area. After reviewing a surveillance video of one incident – along with a copy of

2

the suspect's fake driver's license – Gannon published still images of the woman to an interstate police network. Michael Henricks, a police detective in Pennsylvania, soon responded and advised Gannon of his belief that the woman was Dorsey; he also attached a photograph of Dorsey along with her criminal history. Gannon and Henricks contacted Dorsey's probation officer in Pennsylvania and all three officers agreed that Dorsey was the individual depicted in the surveillance footage. A short time later, Gannon arrested Dorsey, who spent two days in jail before posting bail. Dorsey eventually provided alibis for the incidents, which were corroborated, and the charges against her were dropped. Dorsey then commenced this action, bringing claims under section 1983 for false arrest, malicious prosecution, and equal protection violations, as well as several claims under state tort law. The district court granted summary judgment in favor of Defendants on the federal claims and declined to exercise supplemental jurisdiction over the state claims. This appeal followed.

We review a district court's grant of summary judgment *de novo*, construing all evidence in the light most favorable to the nonmoving party. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

3

Dorsey argues principally that the district court erred in dismissing her section 1983 claims for false arrest and malicious prosecution. To prove a claim for false arrest, a plaintiff must show that (1) "the officer intended to confine the plaintiff," (2) "the plaintiff was conscious of the confinement and did not consent to it," and (3) "the confinement was not otherwise privileged," such as whether it was supported by "probable cause to arrest." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). A claim for malicious prosecution requires the plaintiff to show (1) "the initiation or continuation of a criminal proceeding against [the] plaintiff," (2) the "termination of the proceeding in [the] plaintiff's favor," (3) "lack of probable cause for commencing the proceeding," and (4) "actual malice as a motivation for [the] defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted). Although these two claims have different elements, they share one thing in common: for each, the existence of probable cause is a "complete defense" to the cause of action. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). So long as probable cause existed at the time of arrest, and continued to exist for the duration of the prosecution, a plaintiff cannot prevail on either claim. *See id.*

As the Supreme Court has noted, probable cause is not an especially "high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It requires only that the

officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Curley v. Village of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001) (internal quotation marks omitted). Officers may establish probable cause based on a variety of sources, ranging from eyewitness accounts to anonymous tips. *See United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007). Significantly, even "mistaken information" can support a finding of probable cause, "so long as it was reasonable for [the officer] to rely on it" at the time. *Manganiello*, 612 F.3d at 161; *see also Hill v. California*, 401 U.S. 797, 802–03 (1971).

Based on the record, there can be no serious dispute that Gannon had probable cause to arrest Dorsey. Indeed, she was identified as the woman in the surveillance photos by no less than three officers, one of whom was Dorsey's own probation officer. Nor did Henricks pull Dorsey's name out of a hat: as he reported to Gannon, he identified Dorsey's name after he searched through Pennsylvania's database using the fake Pennsylvania license used in the check frauds. Under these circumstances, "a competent police officer could believe it was objectively reasonable to arrest [Dorsey] for the [crimes] that had been committed." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also id.* ("Once a police officer has a reasonable basis for believing there is probable

cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

And while it is of course true that the officers' identification turned out to be erroneous, Dorsey points to no evidence that Defendants continued to prosecute her after probable cause dissipated.  *See Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003) (explaining that a malicious prosecution claim could have merit if "probable cause [was] present at the time of arrest" but evidence later "surface[d]" that "eliminate[d] that probable cause" (internal quotation marks omitted)).  To the contrary, prosecutors promptly dismissed Dorsey's charges once they vetted her alibis (supported by cell-site data and a polygraph test) and determined that they could not "conclusively" say that she was the individual in the surveillance footage.  App'x at 58–59.  Though Dorsey had the benefit of discovery, she identifies nothing to suggest that Defendants persisted in prosecuting her after they substantiated her alibis.

While Dorsey offers several other arguments – including that the officers "fabricate[d]" the pictures of Dorsey used to make the identification, Dorsey Br. at 34 – none has any basis in the record, *see* App'x at 17 (district court characterizing this argument as "border[ing] on frivolous").  Put simply, even though the identification turned out to be mistaken, Gannon cleared – by a good margin – the

6

low bar needed to establish continuing probable cause and defeat Dorsey's claims for false arrest and malicious prosecution.

Dorsey also urges us to revive her equal protection claim, which alleges that Gannon targeted her because of her race. "To prevail on a [section] 1983 claim of race discrimination in violation of equal protection, the law requires a plaintiff to prove the defendant's underlying racially discriminatory intent or purpose." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (internal quotation marks omitted). But Dorsey points to no evidence of racial bias, relying instead on the wholly unsupported assertion that Gannon sought to arrest "any African[-]American woman residing in Pennsylvania[] who remotely resembled the person depicted in [the] bank surveillance videos." Dorsey Br. at 42. "[C]onclusory allegations" of that sort are not sufficient to withstand summary judgment. *Kia P. v. McIntyre*, 235 F.3d 749, 763 (2d Cir. 2000). And in any event, "seeking out persons who match[] th[e] description" of a suspect is an "altogether legitimate basis" for a police investigation. *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).

Finally, Dorsey contends that the district court erred in dismissing her *Monell* claims against the City and NYPD Commissioner O'Neill. But our caselaw is clear that there can be no *Monell* liability where there has not been an underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.

2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").  As already discussed, Dorsey failed to identify a genuine dispute as to the existence of a constitutional violation, so her *Monell* claims must fail as well.

We have considered Dorsey's remaining arguments and find them to be without merit.[1]  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



---

[1] Dorsey does not challenge the district court's decision to decline to exercise supplemental jurisdiction over her state law claims, which the district court dismissed without prejudice.

8